R.W. Lynch Company, Inc. ("Lynch"), and Robert H. Ford, an Alabama attorney, filed a declaratory judgment action in the Montgomery Circuit Court to determine whether a television advertisement, created by Lynch, violated Rule 7.2(c) of the Alabama Rules of Professional Conduct. The disciplinary commission of the Alabama State Bar Association ("the Bar") had previously issued an ethics opinion concluding that an earlier version of the advertisement violated Rule 7.2(c). The Bar appeals from the trial court's judgment *Page 983 
declaring that the advertisement did not violate Rule 7.2(c).
Rule 7.2, Alabama Rules of Professional Conduct, provides:
"Rule. 7.2 Advertising
 "A lawyer who advertises concerning legal services shall comply with the following:
". . . .
 "(c) A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of any advertisement or written communication permitted by this rule and may pay the usual charges of a not-for-profit lawyer referral service."
The pertinent portion of the comment to Rule 7.2 states:
 "A lawyer is allowed to pay for advertising permitted by this Rule, but otherwise is not permitted to pay another person for channeling professional work. This restriction does not prevent an organization or person other than the lawyer from advertising or recommending the lawyer's services. Thus, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in not-for-profit lawyer referral programs and pay the usual fees charged by such programs."
Lynch, a California advertising agency specializing in attorney advertising, produces an "Injury Helpline" television marketing program currently in use in several states. Several law firms or sole-practitioner attorneys may jointly purchase advertising from Lynch on the "Injury Helpline" commercial. The commercial, directed at individuals with personal injury claims, lasts approximately 30 seconds. The commercial expressly states: "Advertising paid by sponsoring attorneys. Not a lawyer referral service." The attorneys' or firms' names and addresses appear on the commercial, and a 1-800 toll-free telephone number is provided for the viewer to call. The calls are received by an answering service. The caller is asked for only his or her name, telephone number, and Zip Code; the answering service obtains no further information concerning the caller's situation. The caller's information is then forwarded by Lynch to the attorney or firm that has contracted for the advertising rights to that caller's geographical area, determined by the caller's Zip Code. The attorney then contacts the caller to schedule an appointment. Lynch is responsible for placing the commercials and for maintaining the answering service for the participating attorneys.
In 1989, the Bar reviewed a similar "Injury Helpline" commercial produced by Lynch and ruled that it was impermissible under Temporary Rule DR-2-102 (the predecessor to the current Rule 7.2) because, the Bar stated, Lynch's program was a "for-profit referral service." In 1992 Lynch asked the Bar to again review the "Injury Helpline" advertisement, after making minor changes in its format; the Bar refused, and Lynch and Ford filed this declaratory judgment action.
After reviewing the evidence, the trial court, in a detailed, written order, stated, in pertinent part:
 "The only issue before this Court . . . is whether the 'Injury Helpline' is permissible group advertising or whether, as the Bar contends, it is an impermissible 'for-profit' lawyer referral service. The Bar has offered to the Court only one rationale for its position. According to the Bar, the mere use of an answering service, over which the Bar has no jurisdiction, makes the 'Injury Helpline' a lawyer referral service rather than permissible group advertising.
 "Although this Court understands that lawyer advertising can, under some circumstances, be distasteful and fraught with dangers and can even demean the term 'professional,' no such allegations or contentions are made by the Bar in this case with respect to the 'Injury Helpline.' Moreover, this Court is wholly unable on the basis of the use the 'Injury Helpline' makes of an answering service, to characterize the 'Injury Helpline' as a lawyer referral service. On the contrary, all of the evidence in this case shows clearly that the 'Injury Helpline' is not a lawyer referral service, but rather is a permissible *Page 984 
group advertising program. The fact that the Bar has no jurisdiction of an out-of-state answering service in no way changes this result. The Bar has no jurisdiction over many entities with whom lawyers contract. . . .
". . . .
 "The 'Injury Helpline' is permissible group advertising that does not in any way violate Rule 7.2 of the Alabama Rules of Professional Conduct."
To begin our discussion, we note that the Bar asserts that the trial court had no jurisdiction to interpret the Alabama Rules of Professional Conduct. We disagree. By remedial writ the Montgomery Circuit Court can review matters concerning the Bar. See Simpson v. Alabama State Bar, 294 Ala. 52,311 So.2d 307 (1975) (attorney requested a writ of prohibition from the Montgomery Circuit Court to halt Bar disciplinary proceedings). An interested party may file a declaratory judgment action for an interpretation of a Bar rule. See Board of Comm'rs, AlabamaState Bar v. State ex rel. Baxley, 295 Ala. 100, 324 So.2d 256
(1975) (attorney general filed an action in the Montgomery Circuit Court seeking, in part, a judgment declaring that a Bar rule was unconstitutional). Under the circumstances of this case, we hold that Lynch and Ford could properly request a review of the Bar's action through a declaratory judgment proceeding; the trial court's judgment is appropriately before this Court for review.
The Bar next argues that the "Injury Helpline" is a "for-profit referral service," prohibited by Rule 7.2.
We have reviewed the sample commercial as created by Lynch and as viewed by the trial court, and we find it unobjectionable under Rule 7.2. We hold that the "Injury Helpline" is not a referral service; rather, it is a form of group advertising permissible under the Rules of Professional Conduct. A 1989 report drafted by the American Bar Association Standing Committee on Lawyer Referral and Information Service stated the following in regard to lawyer referral services:
 "Lawyer referral programs offer two important services to the public. First, they help the client determine if a problem is truly of a legal nature by screening inquiries, and referring the client to other service agencies when appropriate.
 "The second and perhaps more important function of a lawyer referral service is to provide the client with an unbiased referral to an attorney who has experience in the area of law appropriate to the client's need. . . .
". . . .
 ". . . [The lawyer referral service] is expected to be able to match the consumer's particular legal, economic, geographic, language, and other needs with an attorney who is competent to handle the matter referred or [refer the consumer] to another agency or organization if that is in the best interest of the client."
Comparing the "Injury Helpline" commercial with the functions and services referred to in the A.B.A. report makes it clear that the "Injury Helpline" is a form of group advertising rather than a lawyer referral service. The commercial expressly informs its viewers that it is a paid advertisement for the listed attorneys. The calls are not screened by Lynch's answering service. In no manner are the callers' potential legal needs evaluated by Lynch. No representation is made to the caller regarding an attorney's experience or skill. As noted above, a caller is forwarded to an attorney only on the basis of the geographical area in which the caller lives; the attorney is contractually required to provide a consultation to any person responding to the 1-800 number who resides in the attorney's geographical area. The attorneys who pay for the "Injury Helpline" advertisement are the only persons who speak with the callers concerning the callers' legal situations. The attorneys who participate in Lynch's program pay a flat-rate fee for the advertising, unrelated to the number of calls or type of calls that Lynch forwards to them. The "Injury Helpline" is merely an economical group advertising method that allows individual attorneys and law firms to pool their resources to achieve greater advertising exposure. *Page 985 
The judgment of the trial court is affirmed.
AFFIRMED.
ALMON, SHORES and COOK, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, J., dissents.